CARLTON, J.,
for the Court:
¶ 1. David Keon Braggs appeals his conviction for armed robbery and sentence of twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). Finding no reversible error, we affirm Braggs’s conviction and sentence.
FACTS
¶ 2. On November 16, 2000, four individuals robbed the Trustmark National Bank in Jackson, Mississippi. Witnesses observed the men exit the bank carrying a bag and guns, and drive off in a vehicle. After a dye pack in the money bag exploded, the men abandoned their vehicle and ran. Officers from the Jackson Police Department apprehended three of the robbers — Willie Horton, Sam John Oliver, and William Arilester Tellis — as they fled. Police officers later arrested and questioned Braggs on November 20, 2000. Braggs admitted to being with the perpetrators prior to the robbery, but he claimed he did not want to participate in the robbery and left before the three robbed the bank. A Hinds County grand jury indicted Braggs, Horton, Oliver, and Tellis for armed robbery pursuant to Mississippi Code Annotated section 97-8-79 (Rev.2006). Horton, Oliver, and Tellis all pled guilty to armed robbery.
¶ 8. On November 15-17, 2004, a jury trial was held in the Hinds County Circuit Court. During the trial, the jury heard testimony from the following witnesses: Trustmark employees Charles Taylor, Mikki Smith, Theresa Havens, and Nicole Spires Brown; Norman McCarty and Traci Maloney, who were outside of the bank during the robbery; Wayne Humphreys, the corporate security officer for Trust-mark; Officer Ned Garner of the Jackson Police Department; Federal Bureau of Investigation (FBI) Agents Edward Parme-lee, Norman Comeaux, Patrick Henson, and Brendan Sheehan; and Horton, Braggs’s co-indictee.
¶ 4. The four Trustmark employees who were in the bank during the robbery testified for the State, giving their accounts of the robbery. None of the employees were able to identify Braggs as having been in the bank. They did, however, report seeing four robbers in the bank during the robbery. Photographs of the surveillance tape from the day of the robbery were also admitted into evidence. During Horton’s testimony, he stated that he did not want to testify against Braggs, and he invoked his Fifth Amendment rights upon being questioned by the prosecutors.
¶ 5. At the close of the State’s case, the defense moved for a directed verdict, which the trial court denied. The jury convicted Braggs of armed robbery, and the trial court sentenced Braggs to a term of twenty-five years in the custody of the MDOC. Braggs subsequently filed a motion for a new trial or a judgment notwithstanding the verdict (JNOV) on November 23, 2004, which the trial court denied.[1] *272 Braggs now appeals. He raises one assignment of error, claiming that his defense counsel at trial was ineffective, thereby resulting in an unfair trial.
STANDARD OF REVIEW
¶ 6. Denials of motions for a JNOV or a new trial involve two different standards of review. We review denials of motions for a new trial based on the weight of the evidence, while we review denials of motions for a JNOV based on the sufficiency of the evidence. Price v. State, 892 So.2d 294, 297 (¶ 10) (Miss.Ct.App.2004).
¶ 7. In our review of a denial of a motion for a new trial, we accept as true all evidence in favor of the State. Id. at (¶ 11). We will reverse the denial of a motion for a new trial only if the trial court abused its discretion. Id.
¶ 8. Alternatively, our review of whether the trial court erroneously denied a motion for a JNOV focuses on the sufficiency of the evidence presented at trial. On appellate review of the sufficiency of the evidence, we view the evidence in the light most favorable to the State. Id. at (¶ 12). Additionally, the State “is given the benefit of all favorable inferences that may be reasonably drawn from the evidence, and all credible evidence consistent with the defendant’s guilt must be accepted as true.” Id.
¶ 9. Furthermore, although ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction relief proceedings, the supreme court has held that appellate courts “may address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record.” Archer v. State, 986 So.2d 951, 955 (¶¶ 15-16) (Miss.2008); see also M.R.A.P. 22. On direct appeal, this Court is limited to the trial court record in its review of the claim, and we recognize that “there may be instances in which insufficient evidence exists within the record to address the claim adequately.” Id. at (¶ 15). In such instances, “the appropriate procedure is to deny relief, preserving the defendant’s right to argue the issue through a petition for post-conviction relief.” Id.
DISCUSSION
¶ 10. On appeal, Braggs’s sole assignment of error alleges that his trial counsel was ineffective. Braggs asserts that due to the ineffectiveness of his counsel, he was denied of his right to a fair trial.[2] In Ellis v. State, 952 So.2d 251, 258 (¶ 9) (Miss.Ct.App.2006), this Court recognized that “[t]he standard of review for ineffective assistance of counsel claims is the two-part test of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 ... (1984), which requires a showing that (1) counsel’s performance was deficient and (2) that the deficiency prejudiced the defense.” Accordingly, Braggs must prove that his trial counsel “made errors so serious that [his counsel] was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment ... [and] that counsel’s errors deprived him of a fair trial with reliable *273 results.” Colenburg v. State, 735 So.2d 1099, 1103 (¶ 9) (Miss.Ct.App.1999).
¶ 11. We acknowledge that a presumption exists that an attorney’s performance falls within the wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). The Strickland, test is applied with deference to counsel’s performance, considering the totality of the circumstances to determine whether counsel’s actions were both deficient and prejudicial. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The test is to be applied to the overall performance of the attorney. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. Further, with respect to the overall performance of the attorney, we note that a “counsel’s choice[s] of whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy.” Scott v. State, 742 So.2d 1190, 1196 (¶ 14) (Miss.Ct.App.1999).
¶ 12. Braggs claims his trial counsel seemed determined to ensure that the three co-indictees identified Braggs and implicated him in their crime. Braggs refers specifically to the following statement of his trial counsel during voir dire: “If there was not one shred of evidence that David Braggs participated in the crime charged except evidence from the co-defendants, how many of you could consider the source and give him a fair trial?”
¶ 13. Braggs also submits that the State’s case lacked any substantive evidence that he was an actual participant in the robbery. Braggs admits that he told Agent Comeaux that he had been with the perpetrators prior to the robbery. Braggs, however, claims that he told Agent Comeaux that he abandoned the plot and demanded to be released from the vehicle before anything happened.
¶ 14. Braggs also claims that his trial counsel opened the door for the State to ask Agent Parmelee about statements made by the co-indictees to FBI agents regarding Braggs’s involvement in the robbery. Braggs specifically refers to the cross-examination of Agent Parmelee, wherein his defense counsel asked the agent whether he possessed “any information that might link ... Braggs to anything regarding this crime.” Agent Par-melee responded, “Other than the items of evidence that were collected, which we’ve been over, it’s my understanding there were statements by the co-defendants and other things.” Braggs asserts that his defense counsel’s question opened the door for the State to inquire further into statements made by the co-indictees, which incriminated Braggs.
¶ 15. The State argues that Braggs failed to show that his counsel was ineffective or that his trial was unfair. The State submits that Braggs’s guilty verdict resulted not from ineffective counsel, but rather from substantial credible evidence supporting Braggs’s guilty verdict. The State cites to McClain v. State, 625 So.2d 774, 778 (Miss.1993), in support of its argument that sufficient testimony and evidence in support of Braggs’s conviction exists, even when excluding the disputed information elicited on cross-examination by Braggs’s defense counsel.
1116. We now turn to a review of the evidence in the record. Bank employees Taylor and Brown testified to seeing four men rob the bank on November 16, 2000. Agent Comeaux testified that he could identify Braggs’s face from photograph nine of the photographs from the surveillance tapes made on the day of the robbery. This particular photograph captured a man’s face, and Agent Comeaux identified the man in the picture as *274 Braggs. The man in photograph nine wore a New York Yankees cap. The witnesses outside of the bank, McCarty and Maloney, testified that they saw four men exiting the bank with a bag and guns, and these witnesses observed a New York Yankees cap left behind in the bank parking lot when the four men abandoned their car. Horton, one of the co-conspirators, testified that he had received no promises of reward or leniency. Additionally, before Horton invoked his Fifth Amendment right to remain silent, he testified that Braggs remained a friend and that they had been friends since childhood; identified Braggs in the courtroom; and admitted to previously telling investigators that Braggs had participated in the robbery.[3] The record shows that Horton refused to inculpate Braggs at trial or identify Braggs as a participant in the robbery.
1117. The record shows the defense raised no motion for a mistrial when Horton invoked his right to remain silent on direct examination after he was asked to identify Braggs as one of the robbers. Instead, the defense proceeded to cross-examine Horton. Then, the State rested. The defense moved for a directed verdict, arguing that the State had failed in meeting its burden to provide “hard evidence” incriminating Braggs, and that the State had failed to produce any testimony that could establish Braggs’s presence at this bank robbery. The record reflects that rather than raising an objection[4] or a motion for a mistrial, the defense instead used Horton’s refusal to answer questions regarding Braggs’s participation in, or presence at, the bank robbery to its strategic advantage by moving for a directed verdict on the basis of a failure of proof by the State. The trial court denied the defense’s motion for a directed verdict and its subsequent post-trial motion for a JNOV. On appeal, the defense again raises its challenge to the sufficiency of the evidence — asserting a failure-of-proof argument — in support of Braggs’s assignment of error claiming ineffective assistance of counsel.
¶ 18. The face of the record fails to support Braggs’s claim of ineffective assistance of counsel. See Archer, 986 So.2d at 955 (¶ 15). The record contains sufficient evidence supporting the jury’s verdict and Braggs’s conviction. Braggs has failed to show that his counsel performed deficiently. Therefore, Braggs’s argument fails to satisfy even the first prong of Strickland, which requires both a showing of deficient performance by counsel and resulting prejudice.
¶ 19. In Liddell v. State, 7 So.3d 217, 222-23 (¶ 14) (Miss.2009), cited by both parties in their briefs, the supreme court found no evidence of ineffective assistance of counsel where the defense counsel questioned a witness about previously buying drugs from Liddell, thus eliciting testimony that Liddell sold drugs. As previously acknowledged, whether the *275 prongs of the Strickland test are met is determined by an examination of the totality of the circumstances. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. Additionally, “if [we] can determine from the record that counsel was ineffective, then it should have been apparent to the presiding judge, who had the duty ... to declare a mistrial or order a new trial sua sponte.” Colenburg, 735 So.2d at 1102 (¶ 8).
¶20. In Houston v. State, 887 So.2d 808, 815 (¶ 34) (Miss.Ct.App.2004), we held that
[t]his Court is reluctant to define counsel’s trial strategy as ineffective assistance of counsel. On matters of trial strategy, this Court generally defers to the judgment of counsel. This Court often notes that complaints concerning counsel’s failure to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall within the ambit of trial strategy.
(Internal citations omitted).
¶ 21. Accordingly, we find that Braggs’s assertion that he received ineffective assistance of counsel lacks merit. We affirm the trial court’s judgment of conviction and find no error in the trial court’s denial of Braggs’s motion for a JNOV or, in the alternative, a new trial.
¶ 22. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING, P.J., ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. GRIFFIS, P.J., AND ROBERTS, J., CONCUR IN RESULT ONLY. BARNES, J., CONCURS IN PART AND IN THE RESULT.

. Braggs filed a request for a writ of mandamus alleging that the trial judge, Bobby De-Laughter, never ruled on his motion for a JNOV or a new trial. On appeal, the Mississippi Supreme Court ultimately entered an order where it acknowledged Judge William Gowan’s order in response to the request for the writ, stating that Judge Gowan assumed Judge DeLaughter considered the motion and orally denied the motion before sentencing. The supreme court had held that Judge Gow-an's order should be treated as a denial of the motion for a JNOV or a new trial. The supreme court gave Braggs thirty days from the entry of its November 10, 2011 order to file his notice of appeal in the trial court.

. Although Braggs raises this issue for the first time on appeal, we acknowledge that the supreme court has held "errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal.” Read v. State, 430 So.2d 832, 837 (Miss.1983) (citation omitted) (rejecting the State’s argument that an ineffective-assistance-of-counsel issue is procedurally barred “because it was not properly raised or preserved in the trial court,” explaining that the defendant "never had a meaningful opportunity to raise the issue in the court below”).

. The defense counsel raised no motion for a mistrial, but instead cross-examined Horton, confirming that Horton understood his Fourth and Fifth Amendment rights. When asked to identify Braggs in a photo, he invoked his right to remain silent. Horton also refused to answer when asked whether Braggs got sprayed with the dye from the money bags, but continued to provide testimony about the other co-conspirators. Horton explained how Tellis jumped over the bank counter with the gun, and he also testified about their flight from the bank.

. See Puckett v. State, 737 So.2d 322, 349 (¶ 81) (Miss.1999) (failure to assert contemporaneous or specific objection bars review); Williams v. State, 445 So.2d 798, 806 (Miss.1984) (specific ground or grounds for objection must be raised to the trial court “so that timely remedial action, if necessary and possible, can be provided”).